Good morning. May it please the Court, my name is Katrina Robson for O'Malveny and Myers, pro bono counsel for Marvin Equizabel in this matter. We are here today because there is an omission in the statutes and the regulations that govern removal proceedings. Those statutes and regulations provide no protection for minors who appear at removal proceedings with an adult who appears unable or unwilling to represent their interests. In this case, that led to a glaring omission in the record of the removal proceedings of Marvin Equizabel. But counsel, in this case, it's not like the Johns case. Here you have both a mother and a lawyer. A lawyer who, insofar as the record is concerned, shows no disciplinary record, no chastisement by previous IJs or the BIA. Why wasn't he adequately represented? Because, Your Honor, when an adult is repre — is — hires an attorney to represent a minor, the attorney acts at the direction of the adult. So where in the record it appears that the adult is unable or unwilling to represent the interests of the minor, we believe that it would be necessary for the immigration judge to at the very least hold a full hearing on the issues before determining that the child had voluntarily and knowingly waived his right to a hearing on his asylum. Is there any reason to believe that the minor's interests were adverse to his mother's interests? You know, if there were — if the judge said, look, I've got one visa into the United States, who wants it? Then there would be good reason to say, wait a minute, the mom is not going to be the best advocate for her child. But why would — what would make us think that a mother would not want to do everything that she could to determine that an immigration judge needs to take additional steps to protect a minor? Minors are such a susceptible — are so susceptible and vulnerable in immigration proceedings. And as this Court has previously found, a minor requires the assistance of the adult to navigate deportation proceedings. If we were to adopt your rule, would that suggest that in any case in which we had a family's interest — we see immigration cases all the time in which we have whole families that are interested. Does that mean that we're going to have to get separate counsel for all of the — all of the members of the family? I wouldn't say it would be necessary to have separate counsel. What we're asking for here is where it appears — where there's some omission in the record that makes us — at least raises our awareness that perhaps the adult here is not representing the interests of the child. The immigration judge at least holds a full hearing on the merits. And if the adult there, after the immigration judge says, I feel that it is appropriate here for me to hear some more evidence and to at least ask some questions of the minor myself, and the adult still says at that point, I want to give the rights to that hearing. Okay. Counsel, what's the omission in the record here? The omission in the record is the date of Marvin's entry into the United States. Okay. But they had an opportunity to provide that. Exactly. And nothing was provided. Exactly. And so what we're continuing — Counsel, to this point, do you have any evidence that he was here in 1998? The only evidence that I have, or the only knowledge that I have about his entry date, I obtained from him through communications in the course of proceeding but, capitally, in all the years that this proceeding has been pending, nobody has come forward to say, we have demonstrated proof of the prejudice here because here are his report cards from U.S. schools from the years 1998 forward. Nobody's proved that to this point, have they? Nobody's come forward with anything? No, Your Honor. No one has come forward with anything. Okay. So we've had lots of opportunities in which we might have even come at this point and said, here's the proof of the prejudice. We've got — here's the evidence, and they neglected it, and that might — that might also suggest that we even had a case of malpractice. Yes, Your Honor. But nobody's done that. No one has done that, Your Honor. Okay. So we've had a full and fair opportunity. We had notice that that was what was — what they needed to come back to the second hearing with, and nobody came back with that evidence. Well, and that — that is what we contend was what put a — what should have put the immigration judge on notice that the mother may not have been representing adequately her son's interests. Why didn't it put the — the I.J. on notice that no such proof existed? Well, it could have done that if the immigration judge had simply asked the mother that question. You know, why did you not bring the evidence that I'm looking for? This, of course, is what the lawyer said in the first place was there was no such evidence because he hadn't come here in 1998. And she changed her mind at the first hearing. Well, and that's what — that is part of what we're contending should have raised the immigration judge's at least questions in his mind as to what's going on on behalf of this child. This is an incredibly vulnerable class of immigrants, and he should have at least thought to himself, if one person in this proceeding is telling me that he arrived in 1998, and I ask for evidence of that, and nobody brings the issue to my attention again, nobody brings the evidence that could potentially prove that he's allowed to remain in the United States, we contend the immigration judge should at least have asked that question. Why isn't there any evidence here? Well, why hasn't O'Melveny and Myers gotten the records from the school? As Judge Bybee indicated, even to this day, even though it's not part of the record, if there's some basis, some equitable basis to consider that maybe there is something out there that needs to be considered, perhaps someone could bring it forward. But the fact that it has not occurred seems to me to be indicative of the fact that there is no such evidence. And therefore, no matter how good the lawyer was, and no matter how devoted the mother might be, it ultimately gets down to the same thing. If this young man was not in the United States prior to the date of the change in the law, he's out of luck. Isn't that right? That would be correct. So I would love to have some help from you as to what's the remedy here. It seems to me that this claim that you're making now should have been made to the BIA. It wasn't made to the BIA. Why not? Well, because of the course at the level of the BIA proceedings, Marvin was still being represented in the deportation proceedings by his mother. And so we're claiming that because that mother seemed to be unable or unwilling to represent her son's interests in the immigration proceedings, that defect continued through the BIA proceedings. And we now do not have a record by which we could determine whether he arrived in 1998 or 2001. But as Judge Bivey indicated, I mean, we have thousands of immigration cases in the Ninth Circuit, thousands. Some of them are absolutely heart-wrenching cases. And here you have a situation where your firm, I'm sure with the best of intentions, is saying, we really got to protect this class of people. It would involve potentially tens of millions of dollars across the country to provide counsel for people who are not adults, whose parents don't maybe speak English very well, don't understand things very well. And moreover, in this case, you have a situation where not only do you have the mother there, but you have a lawyer who was there, who represented. They went off. They had a little sidebar with the client and a sidebar with the judge, talked about these things in terms of the answer. I mean, that's fairly good representation compared to a lot of things that we see. The facts just aren't very good for your case, frankly, counsel. Can you help us with anything that would help put this in a better light? Well, Your Honor, I think first I would say that we're not contending that in every case counsel has to be appointed to the minor. What's the standard? We believe that the standard should be if there's question in the immigration judge's mind regarding whether the parent or the adult who is with the minor is able to adequately represent that child's interest. But here you have a parent and a lawyer. By definition, the lawyer is representing the child in this case, right? At the direction of the parent. I understand that. But he still purports to represent the child. Yes. So you're saying that the standard ought to be that the I.J. ought to evaluate what the lawyer is doing and in effect make his or her own ineffective assistance of counsel determination? Is that what you're saying? No, Your Honor. What we're saying is that where there is a question about whether the adult is truly representing the interest of the child. Why would there be a question? Why should there be any question in the judge's mind? The mother and the son are not adverse here. There shouldn't be any question that they're not adverse here. Is there any reason that the judge should think that they're adverse? No, but we don't think that adversity is the only situation in which a parent may be unable to represent the child. Okay. Well, what else should have, other than the fact that they failed to come forward with the proof? And an I.J. is going to see that every day. Yes. We see this all the time, those kinds of failures of proof. So what would have tipped off the I.J. here that the mother wasn't adequately representing the child, other than the fact that she failed to come forward with proof that she said she had, and there was good question to believe that she didn't, in fact, have it? Well, I think there are several issues that would come to the immigration judge's attention. First of all would be, in the first hearing, the mother couldn't remember what date her son had arrived. That date was determinative of whether her son was eligible for temporary protected status. So it was a little bit unusual that she would come to that hearing without that kind of information. The second issue would be, at the next, at the very second hearing, the first order of business was to grant to the mother temporary protected status. There is no derivative claim for Marvin under his mother's temporary protected status. So that means at that point in the proceedings, the mother was being told she could remain in the United States, and her son was being told that he, without showing some sort of independent claim for relief, he was going to have to return to El Salvador. Immediately thereafter, she waived his right to a hearing on his asylum or withholding a removal claim. Okay. Again, again, the question I asked you at the beginning of your argument, is there any reason to believe that she didn't want her son to come into the United States, that she was an inadequate mother? We do not. There is nothing in the record other than those omissions that we could look to. Let me give you a scenario. If, for example, we had an I.J. had some evidence before him, even in the department in the courtroom, that suggested that the mom had decided this was a really good way to foist off the raising of her child on her parents who remained in El Salvador, then we might say, well, there's good reason here for — there's an incentive here for her to want to be able to get herself into the United States, but send her child back where he becomes the financial and social responsibility of somebody else. If she's an unfit mother, that might be something that would key an I.J. Do we have any evidence of that? On the record, I don't think the evidence goes as high as that. I think what the evidence does is raise a question about perhaps whether she has that kind of a motivation. And what we're saying is that where you have a hearing like this with a minor, and the minor is vulnerable, and you don't hear the minor's voice anywhere on the record, the immigration judge doesn't ask him any questions. How old was he at the time? He was 12 years old. And where we don't hear his voice anywhere on the record, we feel like it's — we feel that it's important for the immigration judge to at least explore the issue. Marvin never spoke to the immigration judge. The immigration judge didn't explore whether potentially facts like that might exist. Well, how more specific can you get than to have a direction to bring the documentations to the next hearing? Mm-hmm. Your Honor, we feel that that was very specific, and that is part of our concern from this record. She was directed to bring those documents with her to the next hearing, and they don't appear at the next hearing. And there's no follow-up from anyone in that room. None of the adults in that room followed up on that point. Well, whose obligation is it? Well, we feel that in this case, where it's a minor and there's a question of whether the adult is adequately representing the minor's interests, it is both the immigration judge's responsibility to at least hold a hearing on the merits. In the first instance, it would be, of course, the responsibility of the adult who is representing the child's interests. But if there is not an adult there doing that — If the judge — if the judge during that hearing had turned to her and said, at the last hearing, I told you to bring the documents with you. Bring his report cards. Bring something. Do you have those with you? And she said, no. And he said, do you have them? And she said, no. Or she said, yes. Would that trigger some duty to now appoint a guardian ad litem? I'm sorry. I think I might understand your question. So if the immigration judge had asked her, do you have the records? And she said, yes. Did you bring them? No. I'm not sure at that point the immigration judge would have been in the position of needing to appoint a guardian ad litem. At that point, he would have been in the position of at least holding a hearing on the issues. Okay. Let me talk to Marvin. I'd like to hear what he has to say about when he arrived. Tell me why you didn't bring those school records with you. At least explore the issue. And if at that point she said, I don't want to, I'd rather just waive my son's rights to any hearings and have him sent back to El Salvador, then in that circumstance, now we're at a point where the immigration judge would be under an obligation to provide a guardian ad litem, because there's some question of whether the mother is truly representing the son's interests. Thank you, Ms. Robson. We will hear from the government. May it please the Court. My name is Elisa Alya Shmierny, and I represent Respondent Acting Attorney General Peter DeCaesa. With all due respect, Your Honors, this Court does not have jurisdiction to hear this issue. The question of whether adequate held requires exhaustion below. At any time, Petitioner's new counsel could have opened a motion for a motion to reopen the case down at the board level. Further, if this Court finds jurisdiction, it is required to deny this petition. Let's turn to the question of our jurisdiction, then, because that seems pretty fundamental. Isn't there an exception for a colorable constitutional claim? For a colorable constitutional claim, there is, but this specific situation where adequate representation is involved, this Court, with minor exceptions that do not fit into this situation, factual pattern, has held that lower exhaustion is required. Dressing the claim up in constitutional terms or couching it in constitutional terms does not make this any less of a procedural issue. There is still redress down before the board if that evidence exists. At that point, if the evidence exists and the motion to reopen is denied, then it can come before this Court as a review for abuse of discretion. Is it the government's position that in order to raise the issue of, I don't know what you want to call it, inadequate representation of counsel, inadequate mothering, I don't know what it is, is the government's position that the issue of the appointment of a guardian ad litem or adequacy of representation should have been raised at the BIA? Absolutely. And that failure to do so is a failure to exhaust administrative remedies and, therefore, deprive us of jurisdiction? Absolutely. And the issue here is opposing counsel is confusing the issue, bringing it in, you know, constitutional claims, whether this child, a minor, deserved adequate representation. He had counsel there. He had his mothers whose interests were aligned with him there. This is, if there is documentary evidence out there, this is an issue of ineffective assistance of counsel, and then they need to comply with the Lozada requirements down at the board. But until then, there's no claim here that this Court can recognize. And if the Court does find jurisdiction, the agency procedures were extremely fair. He was ably represented by counsel. His mother, whose interests were aligned with him, was there representing him. The immigration judge did a fair job of getting to the heart of the issues and making sure that the minor son was — that everybody there at the immigration proceeding understood that he was speaking specifically about the minor son, that when they waived the claims for asylum, withholding, and protection under CAT, that they were specifically speaking about the minor son. And in that situation, the procedure was fair. The Second Circuit has held that you don't need a minor with representation, even without a mother aligned with him, is adequately protected there. Further, there's no error in the board affirming the immigration judge's decision. The only issue before the immigration judge was whether voluntary departure was — whether he was eligible for voluntary departure. And the immigration judge expressly granted that. And that was a benefit to the minor that was achieved in part by the discussion that took place at the court and the mother's willingness to waive the other rights. Isn't that correct? Absolutely. And there's no error by the board. There's no error by the immigration judge. There was adequate representation. There's no error by the board. And there's no due process issue here. Well, the one relevant fact at the heart of all of this is the date of the Petitioner's entry into the country. Absolutely. And how can we say that Petitioner was not prevented from reasonably presenting his case where neither the attorney nor the mother could give us the date? After specifically requesting extra information at the continued hearing, the parent didn't provide that information. The attorney didn't provide that information. And your questions were extremely on point. Petitioner's pro bono counsel still has not provided that information down at the board level for a motion to reopen. So it's the government's contention that it's not that nobody tried or nobody cared to help Petitioner. Certainly they did. He's just, unfortunately, ineligible for any relief from removal. And if the counsel for this young man had the information, they could move to reopen at the BIA level, could they not? Absolutely. At any time. There are time restrictions, limitations for a motion to reopen. But there are specific exceptions, especially for ineffective assistance at counsel, that allows for that kind of evidence to get put into the record. And at that point, if the board denies under its discretion, which it's able to do, then it comes up to here, where there's jurisdiction, to review on the basis of abuse of discretion whether that was a proper decision. So at the end, at the final, I mean, there's, you know, there's no – there's a fair trial. But even beyond that, there's no prejudice. Everything that is before the immigration judge has been granted. Voluntary departure was the last thing that's there. This is the record. This is all that's there. And there's no evidence of TPS eligibility. There's question about whether he has evidence, but that's not evidence that he was eligible and he was there before September 29, 2001. There's no evidence on the record that he meets the requirements for asylum withholding removal or cap. And if, again, if Petitioner's counsel, new counsel, wishes to develop the record, the board is the appropriate place for that through a motion to reopen. And that's the – that's counsel's position. That's the government's position. I'm sorry. So while we feel respectfully that this court does not have jurisdiction to hear this because it is an inadequacy of representation claim couched in constitutional language, we feel that this board needs to dismiss this petition. And if this court does find jurisdiction, we feel that he was ably and adequately represented by counsel. His mother was there to protect him, whose interests were aligned with his. The immigration judge went over, specifically protected and made a fair hearing. The board was proper in its decision to deny. And if the record isn't complete in these 50 pages, then Petitioner's new counsel has redress with the board to provide the evidence that shows that he was here before September 29, 2001, or in the alternative, show that – or show that he's eligible for asylum withholding and removal. Thank you, counsel. Ms. Roslin, you have far exceeded your time. I will allow you one minute if you'd like to address the jurisdictional question. Certainly, Your Honor. Your Honor, government argues that, in fact, there is no jurisdiction here for this court because the claim is – should have been addressed at the BIA level. But this court in Grandes or Osagira has already found that where an alien was through BIA proceedings, this court does have jurisdiction to look at the due process violation. We would argue that there is a similar situation here where the mother was not – where there is a question of whether the mother was ably and adequately representing her son's interests. Thank you, Your Honor. Okay. Thank you very much. Ms. Roslin, we recognize that you're a pro bono counsel. We thank you and your law firm for ably representing the Petitioner here. We thank both counsel for the argument. Tovar Eskisabl is submitted. The next case on the docket is Edashami v. Suarez.
judges: Bybee, M. Smith, Mills